DAVID N. KELLEY
United States Attorney for the
Southern District of New York
By: MARGERY B. FEINZIG (MF-0553)
    BARBARA A. WARD (BW-4314)
Assistant United States Attorneys
300 Quarropas Street
White Plains, New York 10601
Tel. (914) 993-1912
    (212) 637-1048



COPY

FILED
!SEP 0 1 2005
USDC WP SDNY

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------x

UNITED STATES OF AMERICA,          :       VERIFIED COMPLAINT

            Plaintiff,             :       05 Civ.

          - v -                    :

ALL ASSETS OF BAYOU ACCREDITED     :       **05 CIV. 7722**
FUND, LLC; BAYOU AFFILIATES
FUND, LLC; BAYOU NO LEVERAGE        :      **Judge McMahon**
FUND, LLC; BAYOU SUPERFUND, LLC;
BAYOU SECURITIES, LLC; BAYOU        :
MANAGEMENT, LLC; AND BAYOU
FUND LLC,                           :

INCLUDING, BUT NOT LIMITED TO,
APPROXIMATELY $100,010,673.68       :
ON DEPOSIT AT BANK OF AMERICA
IN THE NAME OF THE ARIZONA STATE    :
TREASURER AND REFERENCED AS
SW 2005-001633,                     :

AND ALL INTEREST AND OTHER          :
PROCEEDS TRACEABLE THERETO,
                                    :
            Defendants in Rem.
------------------------------------x

            Plaintiff United States of America, by its attorney,

David N. Kelley, United States Attorney for the Southern District

of New York, for its complaint alleges, upon information and

belief, as follows:

## I.    JURISDICTION AND VENUE

1.    This action is brought by the United States of
America pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984, seeking
the forfeiture of all right, title and interest in all assets of
Bayou Accredited Fund, LLC; Bayou Affiliates Fund, LLC; Bayou No
Leverage Fund, LLC; Bayou Superfund, LLC; Bayou Securities, LLC;
Bayou Management, LLC; and Bayou Fund LLC (hereinafter referred
to collectively as "Bayou"), including, but not limited to,
approximately $100,010,673.68 on deposit at Bank of America in
the name of the Arizona State Treasurer pursuant to a seizure
order issued by a judge of the Superior Court of the State of
Arizona in and for the County of Maricopa (the "Seized Funds")
(hereinafter referred to collectively as the "Defendants in
Rem").    Forfeiture is sought on the grounds that the Defendants
in Rem constitute or are derived from proceeds traceable to mail
fraud, in violation of 18 U.S.C. § 1341; wire fraud, in violation
of 18 U.S.C. § 1343; and securities fraud, in violation of 15
U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.

2.    This Court has jurisdiction over this action
pursuant to 28 U.S.C. §§ 1345 and 1355.

3.    Venue is proper pursuant to 28 U.S.C. § 1355
because acts and omissions giving rise to the forfeiture occurred
in the Southern District of New York.

2

## II.  PROBABLE CAUSE FOR FORFEITURE

4.    An investigation conducted by the Federal Bureau
of Investigation ("FBI"), the United States Securities and
Exchange Commission ("SEC"), the Commodity Futures Exchange
Commission ("CFTC") and the United States Attorney's Office for
the Southern District of New York has disclosed that between in
or about 1998 and in or about August 2004, Bayou misrepresented
the value of its assets and caused these misrepresentations to be
disseminated to current and prospective investors.  These false
and misleading statements and representations induced new
investors to invest in Bayou and lulled existing investors into
retaining their investments in Bayou.  Thus, all of the assets of
Bayou, including but not limited to the Seized Funds, constitute
the proceeds of criminal activity, including wire, mail and
securities fraud, in violation of 18 U.S.C. §§ 371, 1341 and
1343, 15 U.S.C. § 78j(b) and 17 C.F.R. § 240.10b-5.

### Background

5.    At all times relevant to this action, Bayou
Accredited Fund, LLC, Bayou Affiliates Fund, LLC, Bayou No
Leverage Fund, LLC, and Bayou Superfund, LLC were hedge funds
managed and controlled by Samuel Israel III and/or Daniel Marino.
In addition, Bayou Securities, LLC, Bayou Management LLC and
Bayou Fund LLC were related entities under substantially the same
management and control.  Bayou Securities, LLC is a registered

3

Broker/Dealer with the NASD that acts primarily as an introducing broker for the funds. Bayou Management LLC, a New York limited liability company, managed the funds. Bayou Fund LLC, also a New York limited liability company, was formed for the purpose of trading in securities.

6.   According to materials distributed by Bayou, Bayou was formed in or about June 1996, by Samuel Israel III, and certain of the funds were opened to investors in or about January 1997. The purpose of the funds was to "invest in equity securities, financial and options thereon, put and call options and interest rate sensitive instruments traded on U.S. exchanges."

7.   According to materials distributed by Bayou, since its founding, Israel has been the Chief Executive Officer and Chief Investment Officer of Bayou Management LLC and, as such, was responsible for the investment management and operations of Bayou. Israel conducted his securities trading out of Bayou's office in Stamford and a location in Westchester County. Daniel Marino is a certified public accountant who became Bayou's Chief Financial Officer and Chief Operating Officer and performed these functions from Bayou's inception.

8.   According to Bayou documents and witnesses, Bayou mailed to investors, among others, quarterly financial statements that reflected the amount that investor had contributed to the

4

fund and the purported accumulated gain or loss on that
investment.  In addition, on an annual basis, management mailed
financial statements and a report of independent certified public
accountants, which purported to disclose the true financial
condition of the funds.

9.    From in or about 1998 through in or about August
2005, Bayou perpetrated a fraud on its investors, among others,
in that the financial statements and other documents that it
mailed and faxed to investors and others contained materially
false statements that, among other things, overstated gains,
understated losses, and reported gains where there were losses.
For example, the "audited" financial statements for the year
ended 12/31/03 reported that the Bayou Superfund had
approximately $192,000,000 in assets and a net gain from trading
in the amount of approximately $27,000,000.  In truth and in
fact, at the end of 2003, the Bayou Superfund had a total value
of approximately $53,600,000 and it lost $35,000,000 in trading.

10.   In furtherance of the scheme to defraud investors
and others, a phony accounting firm, named Richmond-Fairfield
Associates, was created and held out as an independent certified
public accounting firm that purported to audit and certify
Bayou's false financial statements.  In fact, Richmond-Fairfield
Associates was a sham and conducted no audits, independent or
otherwise.

11.   The effect of these false statements was to induce
investors to invest in excess of $300 million between 1998 and
2005 in the Bayou funds.

## The Private Placement Programs

12.   According to documents and witnesses, in or about
the spring of 2004, when the Bayou funds' financial statements
falsely reported assets that were overstated by tens of millions
of dollars, Bayou began a series of attempts to conduct
transactions that were purportedly legitimate private placement
transactions, or "programs," that would produce above-average
rates of return - in some cases, 100% per week.  These so-called
investments required that large sums of money be sent to various
foreign and domestic bank accounts.  A review of documents
relating to these "programs" reveals that the "programs" have
some, if not all, of the characteristics of frauds known in the
law enforcement community as "prime bank instrument" and "high
yield program" frauds.

13.   According to bank records, correspondence, other
documents, and witnesses, in connection with these "programs,"
Bayou transferred investor funds to various accounts.
Ultimately, at least $100,001,102.00 in investor funds were
transferred to Account No. 2000026084477 in the name of Majestic
Capital Management at Wachovia National Bank in Flemington, New
Jersey (the "Majestic Account").  The contents of the Majestic

6

Account were seized pursuant to the Arizona court order described above, and constitute the Seized Funds.

14.   The financial transactions conducted by Bayou in furtherance of the purported "programs" included the following:

a.   In or about April 2004, Bayou caused the transfer of $150,000,000 from a Bayou account at Citibank in Bronxville, New York, to a securities trading account at Barclay's Bank in London.  Thereafter, the approximately $150,000,000 was returned to Bayou's Citibank account.

b.   In or about July 2004, $120,000,000 was transferred from Bayou's Citibank account to a bank account in Israel's name at Deutsche Postbank in Hamburg, Germany.

c.   In or about October 2004, approximately 90,000,000 Euros were transferred from the Postbank account to a Sparkasse Hof account in Germany.

d.   In or about December 2004, approximately 90,000,000 Euros were transferred from the Sparkasse Hof account to a securities account in the name of S. Israel, III and Bayou Fund, at ODL Securities in London.  From there, in or about April 2005, individuals from Bayou attempted to transfer approximately $99,191,102 from the ODL account to a Wachovia National Bank account in Hong Kong, but the account number on the wire transfer was actually the number of the Majestic Account.

e.   Bayou transferred an additional $810,000 from
a Bayou account to the Majestic Account, for further credit to
Golden Summit Investors Group Ltd. and final credit to Bayou
Fund.

15.   Thereafter, in or about May 2005, the Arizona
Attorney General's Office, after conducting an investigation
regarding the origin of the $100,010,673.68 in funds on deposit
in the Majestic Account, as well as other accounts held in the
name of Majestic Capital Management, and concluding that the
funds therein were the proceeds of a fraudulent prime bank
instrument scheme, commenced a forfeiture action and took custody
of the Seized Funds.

16.   Upon entry of a final order forfeiting the
Defendants in Rem to the United States, it is the intention of
the United States Attorney's Office to request that the forfeited
property be distributed *pro rata* to victims of the offenses
described herein, pursuant to 21 U.S.C. § 853(i)(1) and 28 C.F.R.
Part 9.

### III.   CLAIM FOR FORFEITURE

17.   Plaintiff repeats, realleges and incorporates by
reference herein each and every allegation contained in
paragraphs one through sixteen of this Verified Complaint.

18.   Pursuant to 18 U.S.C. § 981(a)(1)(C), "[a]ny
property, real or personal, which constitutes or is derived from

8

proceeds traceable to . . . any offense constituting 'specified unlawful activity' (as defined in Section 1956(c)(7) of [title 18]), or a conspiracy to commit such offense," is subject to forfeiture to the United States.

19. "Specified unlawful activity" is defined in 18 U.S.C. § 1956(c)(7), and the term includes any offense listed under 18 U.S.C. § 1961(1). Section 1961(1) lists, among other offenses, violations of 18 U.S.C. § 1341 (relating to mail fraud); violations of 18 U.S.C. § 1343 (relating to wire fraud); and "fraud in the sale of securities."

20. Title 18, United States Code, Section 984 provides, in pertinent part, that

> (a)(1) In any forfeiture action in rem in which the subject property is cash, monetary instruments in bearer form, funds deposited in an account in a financial institution (as defined in section 20 of this title), or precious metals –
>
> (A) it shall not be necessary for the Government to identify the specific property involved in the offense that is the basis for the forfeiture; and
>
> (B) it shall not be a defense that the property involved in such an offense has been removed and replaced by identical property.
>
> (2) Except as provided in subsection (b), any identical property found in the same place or account as the property involved in the offense that is the basis for the forfeiture shall be subject to forfeiture under this section.

9

(b) No action pursuant to this section
to forfeit property not traceable directly to
the offense that is the basis for the
forfeiture may be commenced more than 1 year
from the date of the offense.

21. A forfeiture action or proceeding may be brought
in "the district court for the district in which any of the acts
or omissions giving rise to the forfeiture occurred." 28 U.S.C.
§ 1355(b)(1)(A). Any court with jurisdiction over a forfeiture
action pursuant to Section 1355(b) "may issue and cause to be
served in any other district such process as may be required to
bring before the court the property that is the subject of the
forfeiture action." 28 U.S.C. § 1355(d).

22. The Defendants in Rem are subject to forfeiture
pursuant to 18 U.S.C. § 981(a)(1)(C) because there is probable
cause to believe that they constitute or are derived from
proceeds traceable to offenses constituting specified unlawful
activity, *to wit*, mail fraud, in violation of 18 U.S.C. § 1341;
wire fraud, in violation of 18 U.S.C. § 1343; and "fraud in the
sale of securities."

23. Title 21, United States Code, Section 853(i),
which is applicable to forfeitures under 18 U.S.C.
§ 981(a)(1)(C), provides in pertinent part:

> With respect to property ordered forfeited
> under this section, the Attorney General is
> authorized to--
>
> (1) grant petitions for mitigation or
> remission of forfeiture, restore forfeited

10

                    property to victims of a violation of this
                    subchapter, or take any other action to
                    protect the rights of innocent persons which
                    is in the interest of justice and which is
                    not inconsistent with the provisions of this
                    section. . . .

          24.  By reason of the foregoing, the Defendants in Rem
became and are subject to forfeiture to the United States of
America, pursuant to 18 U.S.C. §§ 981(a)(1)(C) and 984.

          WHEREFORE, Plaintiff United States of America prays
that process issue to enforce the forfeiture of the Defendants in
Rem and that all persons having an interest in the Defendants in
Rem be required to appear and show cause why the forfeiture of
the Defendant in Rem should not be decreed, that this Court
decree forfeiture of the Defendant in Rem to the United States of
America for disposition according to law, and that this Court
grant plaintiff such further relief as it may deem just and
proper, together with the costs and disbursements of this action.

Dated:  New York, New York
        September 1, 2005

                              DAVID N. KELLEY
                              United States Attorney for the
                              Southern District of New York
                              Attorney for the Plaintiff
                              United States of America

                    By:  _____
                         MARGERY B. FEINZIG (MF-0553)
                         BARBARA A. WARD (BW-4314)

                              11

VERIFICATION

STATE OF NEW YORK              )
COUNTY OF NEW YORK             )
SOUTHERN DISTRICT OF NEW YORK )

CARL A. CATAURO, being duly sworn, deposes and says
that he is a Special Agent of the Federal Bureau of Investigation
and as such has responsibility for the within action; that he has
read the foregoing Verified Complaint and knows the contents
thereof, and that the same is true to the best of his own
knowledge, information and belief.

The sources of deponent's information and the ground of
his belief are official records and files of the United States
and information obtained directly and indirectly by deponent
during an investigation of alleged violations of Titles 15 and
18, United States Code.

Carl a. Catauro

CARL A. CATAURO
Special Agent
Federal Bureau of Investigation

Sworn to before me this
1st day of September, 2005:

NOTARY PUBLIC

EVA ALEXANDER
Notary Public - State of New York
NO. 01AL4800335
Qualified in Westchester County
My Commission Expires 3/20/07